[No. S059692. June 24, 1999.]

MARK SANDERS, Plaintiff and Appellant, v.
AMERICAN BROADCASTING COMPANIES, INC., et al., Defendants
and Appellants.

NARAS F. KERSIS, Plaintiff, v.
CAPITAL CITIES/ABC, INC., et al., Defendants.

**COUNSEL**

Johnson & Rishwain, Neville L. Johnson, Brian A. Rishwain; and David A. Elder for Plaintiff and Appellant.

Christensen, White, Miller, Fink, Jacobs, Glaser & Shapiro, Shari Cohen Rosenman, Joie Marie Gallo; White O'Connor Curry Gatti & Avanzado, Andrew M. White, Michael J. O'Connor, Jonathan H. Anschell and David E. Fink for Defendants and Appellants.

James E. Grossberg for the American Society of Newspaper Editors, Cable News Network, Inc., California Newspaper Publishers Association, CBS Broadcasting Inc., the Copley Press, Inc., Freedom Communications, Inc., the Hearst Corporation, King World Productions, Inc., Magazine Publishers of America, Inc., the McClatchy Company, National Association of Broadcasters, National Broadcasting Company, Inc., Newspaper Association of America, Paramount Pictures Corp., the Reporters Committee for Freedom of the Press, San Jose Mercury News, Inc., and Univision Communications Inc., as Amici Curiae on behalf of Defendants and Appellants.

**OPINION**

**WERDEGAR, J.**—Defendant Stacy Lescht, a reporter employed by defendant American Broadcasting Companies, Inc. (ABC), obtained employment as a "telepsychic" with the Psychic Marketing Group (PMG), which also employed plaintiff Mark Sanders in that same capacity. While she worked in PMG's Los Angeles office, Lescht, who wore a small video camera hidden in her hat, covertly videotaped her conversations with several coworkers, including Sanders.

Sanders sued Lescht and ABC for, among other causes of action, the tort of invasion of privacy by intrusion. Although a jury found for Sanders on the

intrusion cause of action, the Court of Appeal reversed the resulting judgment in his favor on the ground that the jury finding for the defense on another cause of action, violation of Penal Code section 632, established Sanders could have had no reasonable expectation of privacy in his workplace conversations because such conversations could be overheard by others in the shared office space. ▆▆ We granted review to determine whether the fact that a workplace interaction might be witnessed by others on the premises necessarily defeats, for purposes of tort law, any reasonable expectation of privacy the participants have against covert videotaping by a journalist. We conclude it does not: In an office or other workplace to which the general public does not have unfettered access, employees may enjoy a limited, but legitimate, expectation that their conversations and other interactions will not be secretly videotaped by undercover television reporters, even though those conversations may not have been completely private from the participants' coworkers. For this reason, contrary to the Court of Appeal's holding, the jury's finding as to Penal Code section 632 did not require the trial court to enter nonsuit on, or otherwise dispose of, Sanders's cause of action for tortious intrusion. Nor, we also conclude, were the jury instructions on the intrusion cause of action prejudicially erroneous.

Although we reverse, for these reasons, the Court of Appeal's judgment for defendants, we do not hold or imply that investigative journalists necessarily commit a tort by secretly recording events and conversations in offices, stores or other workplaces. Whether a reasonable expectation of privacy is violated by such recording depends on the exact nature of the conduct and all the surrounding circumstances. In addition, liability under the intrusion tort requires that the invasion be highly offensive to a reasonable person, considering, among other factors, the motive of the alleged intruder. (*Shulman* v. *Group W Productions, Inc.* (1998) 18 Cal.4th 200, 231, 236 [74 Cal.Rptr.2d 843, 955 P.2d 469]; *Miller* v. *National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1483-1484 [232 Cal.Rptr. 668, 69 A.L.R.4th 1027].) The scope of our review in this case does not include any question regarding the offensiveness element of the tort, and we therefore express no view on the offensiveness or inoffensiveness of defendants' conduct. We hold only that, where the other elements of the intrusion tort are proven, the cause of action is not defeated as a matter of law simply because the events or conversations upon which the defendant allegedly intruded were not completely private from all other eyes and ears.

FACTUAL AND PROCEDURAL BACKGROUND

In 1992, plaintiff Mark Sanders was working as a telepsychic in PMG's Los Angeles office, giving "readings" to customers who telephoned PMG's

900 number (for which they were charged a per-minute fee). The psychics' work area consisted of a large room with rows of cubicles, about 100 total, in which the psychics took their calls. Each cubicle was enclosed on three sides by five-foot-high partitions. The facility also included a separate lunch-room and enclosed offices for managers and supervisors. During the period of the claimed intrusion, the door to the PMG facility was unlocked during business hours, but PMG, by internal policy, prohibited access to the office by nonemployees without specific permission. An employee testified the front door was visible from the administration desk and a supervisor greeted any nonemployees who entered.

Defendant Stacy Lescht, employed by defendant ABC in an investigation of the telepsychic industry, obtained employment as a psychic in PMG's Los Angeles office. When she first entered the PMG office to apply for a position, she was not stopped at the front door or greeted by anyone until she found and approached the administration desk. Once hired, she sat at a cubicle desk,. where she gave telephonic readings to customers. Lescht testified that while sitting at her desk she could easily overhear conversations conducted in surrounding cubicles or in the aisles near her cubicle. When not on the phone, she talked with some of the other psychics in the phone room. Lescht secretly videotaped these conversations with a "hat cam," i.e., a small camera hidden in her hat; a microphone attached to her brassiere captured sound as well. Among the conversations Lescht video-taped were two with Sanders, the first at Lescht's cubicle, the second at Sanders's.

During the first conversation, Sanders and, after a period, a third em-ployee were standing in the aisle just outside Lescht's cubicle. They talked in moderate tones of voice, and a fourth employee, passing by, joined in the conversation at one point. Sanders conceded there was a "possibility" the psychic in the next cubicle beyond Lescht could have overheard the first conversation if he tried, although in Sanders's view that was very unlikely because he had no reason to eavesdrop. The second conversation, which took place with both Lescht and Sanders seated in Sanders's cubicle, was con-ducted in relatively soft voices and was interrupted once by Sanders's receiving a customer call and once by a passing coworker's offer of a snack. During this second, longer conversation, Sanders discussed his personal aspirations and beliefs and gave Lescht a psychic reading.

Sanders pled two causes of action against Lescht and ABC based on the videotaping itself: violation of Penal Code section 632 (hereafter section

632) and the common law tort of invasion of privacy by intrusion.[1] The court ordered trial on these counts bifurcated, with the section 632 count tried first. In a special verdict form, the jury was asked whether the conversation upon which defendants allegedly intruded was conducted "in circumstances in which the parties to the communication may reasonably have expected that the communications may have been overheard." Based on the jury's affirmative answer to this question, the trial court ordered judgment entered for defendants on the section 632 cause of action.[2]

Defendants then moved to dismiss the remaining cause of action for intrusion, for an order of nonsuit, and to reopen their earlier motion for summary judgment on this cause of action. After receiving written submissions and hearing argument, the court denied these motions, allowing trial to go forward on the issue of liability for photographic intrusion. In reliance on *Dietemann* v. *Time, Inc.* (9th Cir. 1971) 449 F.2d 245, which the trial court viewed as articulating a "subtort with regard to invasion of privacy by photographing," the trial court ruled plaintiff could proceed on the theory he had a limited right of privacy against being covertly videotaped by a journalist in his workplace, even though his interaction with that journalist may have been witnessed, and his conversations overheard, by coworkers. At the conclusion of the second phase of trial, the jury found defendants liable on the cause of action for invasion of privacy by intrusion. In subsequent trial phases, the jury fixed compensatory damages at $335,000; found defendants had acted with malice, fraud or oppression; and awarded exemplary damages of about $300,000.

The Court of Appeal reversed the judgment entered on these verdicts and ordered judgment entered for defendants instead. The majority reasoned that "the invasion of privacy tort requires an invasion into a secluded area where one has an objectively reasonable expectation of privacy, that is, an objectively reasonable expectation of confidentiality." Rejecting what it took to be plaintiff's "real argument," i.e., that there exists a right not to be videotaped without one's consent even in circumstances where one lacks "an objectively reasonable confidentiality expectation," the majority held the jury's finding on the section 632 action barred any recovery for intrusion.

In dissent, Presiding Justice Spencer reasoned that, because the PMG offices were not open to the general public, the fact plaintiff's employer or

---

[1] ABC's *PrimeTime Live* broadcast about the telepsychic industry included a short excerpt from the second Lescht-Sanders conversation. Sanders pled causes of action against ABC based on the broadcast, but all such causes of action were disposed of without trial.

[2] Section 632 generally prohibits the nonconsensual recording of a "confidential communication." The statutory definition of confidential communication excludes communications made in circumstances "in which the parties to the communication may reasonably expect that the conversation may be overheard or recorded." (§ 632, subd. (c).)

coworkers could have observed and overheard his interactions with others in the office did not defeat his expectation of privacy as to the public or the news media. "The limitations on plaintiff's expectation of privacy vis-à-vis his employer did not waive his privacy rights as to others. [Citations.] [¶] Plaintiff's exclusive right of occupancy as to members of the general public, such as defendants, suggests he had a reasonable expectation that the private matters occurring in his place of employment would be free from public observation."

We granted plaintiff's petition for review and, by later order, limited the issues to be briefed and argued to the following: (1) whether a person who lacks a reasonable expectation of complete privacy in a conversation because it could be seen and overheard by coworkers (but not the general public) may nevertheless have a claim for invasion of privacy by intrusion based on a television reporter's covert videotaping of that conversation; (2) whether the jury's findings in the first phase of trial, on liability under section 632, legally precluded maintenance of a common law intrusion claim; and (3) whether the jury instructions in the second phase of trial, on liability for intrusion, were prejudicially erroneous.

DISCUSSION

*Question 1: May a person who lacks a reasonable expectation of complete privacy in a conversation because it could be seen and overheard by coworkers (but not the general public) nevertheless have a claim for invasion of privacy by intrusion based on a television reporter's covert videotaping of that conversation?*

*Answer: Yes.*

Neither the trial court nor the Court of Appeal had the benefit of our recent decision in *Shulman* v. *Group W Productions, Inc., supra,* 18 Cal.4th 200 (*Shulman*). We therefore begin by recounting what we said in *Shulman* regarding the privacy element of an intrusion cause of action.

In *Shulman,* we adopted the definition of the intrusion tort articulated in *Miller* v. *National Broadcasting Co., supra,* 187 Cal.App.3d at page 1482, and in the Restatement Second of Torts section 652B. The cause of action, we held, has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person. (*Shulman, supra,* 18 Cal.4th at p. 231.) The first element, we stated, is not met when the plaintiff has merely been observed, or even photographed or recorded, in a public place. (*Ibid.*) Rather, "the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained

unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." (*Id.* at p. 232.)

While *Shulman* reiterated the requirement that an intrusion plaintiff have a reasonable expectation of privacy, neither in *Shulman* nor in any other case have we stated that an expectation of privacy, in order to be reasonable for purposes of the intrusion tort, must be of *absolute* or *complete* privacy. Indeed, our analysis of the issues in *Shulman* suggested, to the contrary, that mass media videotaping may constitute an intrusion even when the events and communications recorded were visible and audible to some limited set of observers at the time they occurred. In *Shulman*, a television producer had fitted a rescue nurse with a small microphone, by which the nurse's conversation with a severely injured accident victim was recorded. Although a number of other persons were participating in the rescue, the record on summary judgment, we noted, left unclear whether any nonparticipant members of the general public were present or could overhear any of the patient's communications to the nurse and other rescuers. (*Shulman, supra,* 18 Cal.4th at pp. 233-234, fn. 13.) Partly on that basis, we found triable issues of fact as to the patient's reasonable expectation of privacy in her conversation with the nurse and other rescuers. (*Id.* at pp. 233, 235.) We thereby implied the plaintiff patient could have a reasonable expectation of privacy in her communications even if some of them may have been overheard by those involved in the rescue, but not by the general public.

*Shulman*'s discussion of possible bases for a reasonable expectation of privacy on the patient's part also suggests that a person may reasonably expect privacy against the electronic recording of a communication, even though he or she had no reasonable expectation as to confidentiality of the communication's contents. Quoting from a prior case involving statutory privacy rights (*Ribas* v. *Clark* (1985) 38 Cal.3d 355, 360-361 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417]), we stated: " 'While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device. [Citation.] [¶] . . . [S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.' " (*Shulman, supra,* 18 Cal.4th at pp. 234-235.)

This case squarely raises the question of an expectation of limited privacy. On further consideration, we adhere to the view suggested in *Shulman*:

privacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law. Although the intrusion tort is often defined in terms of "seclusion" (see, e.g., Rest.2d Torts, § 652B [Intrusion upon Seclusion]; *Shulman, supra,* 18 Cal.4th at p. 232 ["intrusion on seclusion"]), the seclusion referred to need not be absolute. "Like 'privacy,' the concept of 'seclusion' is relative. The mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." (1 McCarthy, The Rights of Publicity and Privacy (1998) § 5.10[A][2], p. 5-120.1.)

*Dietemann* v. *Time, Inc., supra,* 449 F.2d 245, upon which the trial court relied, does, indeed, exemplify the idea of a legitimate expectation of limited privacy. Reporters for a news magazine deceitfully gained access to a quack doctor's home office, where they secretly photographed and recorded his examination of one of them. (*Id.* at p. 246.) The court held the plaintiff could, under California law, reasonably expect privacy from press photography and recording, even though he had invited the reporters—unaware of their true identity—into his home office: "Plaintiff's den was a sphere from which he could reasonably expect to exclude eavesdropping newsmen. He invited two of defendant's employees to the den. One who invites another to his home or office takes a risk that the visitor may not be what he seems, and that the visitor may repeat all he hears and observes when he leaves. But he does not and should not be required to take the risk that what is heard and seen will be transmitted by photograph or recording, or in our modern world, in full living color and hi-fi to the public at large . . . ." (*Id.* at p. 249; see also *Boddie* v. *American Broadcasting Companies, Inc.* (6th Cir. 1984) 731 F.2d 333, 338-339 [Journalists' covert recording of interview may have violated federal anti-wiretapping statute even though plaintiff knew her interlocutors were journalists: "it remains an issue of fact for the jury whether [plaintiff] had an expectation that the interview was not being recorded and whether that expectation was justified under the circumstances." (Fn. omitted.)].)

Equally illustrative of the general principle is *Huskey* v. *National Broadcasting Co., Inc.* (N.D.Ill. 1986) 632 F.Supp. 1282. The defendant's camera crew, visiting a federal prison, filmed plaintiff Huskey, an inmate, in the prison's "exercise cage," wearing only gym shorts and exposing his distinctive tattoos. The federal court rejected the defendant's contention no intrusion could have occurred because Huskey was "not secluded." (*Id.* at p. 1287.) "Of course Huskey *could* be seen by guards, prison personnel and

inmates, and obviously he was in fact seen by NBC's camera operator. But the mere fact a person can be seen by others does not mean that person cannot legally be 'secluded.' . . . Further, Huskey's visibility to some people does not strip him of the right to remain secluded from others. Persons are exposed to family members and invited guests in their own homes, but that does not mean they have opened the door to television cameras." (*Id.* at pp. 1287-1288, italics in original.) Whether the exercise cage could be considered an area of limited seclusion within the prison was a factual question for trial. (*Id.* at p. 1288.)

Similarly, in a famous early case, the presence of an unnecessary male observer at the home delivery of the plaintiff's child was held to be an intrusion, even though the delivery was also observed by the plaintiff's husband, the attending doctor and a woman assistant. (*De May* v. *Roberts* (1881) 46 Mich. 160 [9 N.W. 146, 148-149].) The existence of such limited privacy is not dependent on the plaintiff being in his or her home, as demonstrated by *Huskey* v. *National Broadcasting Co., Inc., supra,* 632 F.Supp. 1282, and many other cases. (See, e.g., *Noble* v. *Sears, Roebuck & Co.* (1973) 33 Cal.App.3d 654, 660 [109 Cal.Rptr. 269, 73 A.L.R.3d 1164] [plaintiff could reasonably expect privacy in her hospital room against intrusion by attorneys and investigators for opposing party in a personal injury lawsuit]; *Estate of Berthiaume* v. *Pratt, M.D.* (Me. 1976) 365 A.2d 792, 795 [86 A.L.R.3d 365] [surgeon who had treated cancer patient committed actionable intrusion by photographing him in hospital bed against his will as he lay dying]; *McDaniel* v. *Atlanta Coca-Cola Bottling Co.* (1939) 60 Ga.App. 92 [2 S.E.2d 810, 816] [electronic eavesdropping on hospital room conversations is intrusion]; *Stessman* v. *Am. Black Hawk Broadcasting* (Iowa 1987) 416 N.W.2d 685, 687 [filming in private dining room of restaurant might be intrusion on patron's privacy, despite lack of complete seclusion]; *Rafferty* v. *Hartford Courant Co.* (1980) 36 Conn.Supp. 239 [416 A.2d 1215, 1216, 1220] [newspaper's photographing and reporting events at private party, contrary to prior agreement, could form basis for an intrusion action, even though party was held outdoors rather than in private home]; *Nader* v. *General Motors Corporation* (1970) 25 N.Y.2d 560, 570 [307 N.Y.S.2d 647, 655, 255 N.E.2d 765, 770-771] [closely shadowing a person in bank in order to observe his transactions may constitute intrusion, even though "mere observation of the plaintiff in a public place" is not generally an invasion of privacy]; see also *Pearson* v. *Dodd* (D.C. Cir. 1969) 410 F.2d 701, 704 [133 App.D.C. 279] [intrusion tort protects against intrusion "whether by physical trespass or not, into spheres from which an ordinary man in a plaintiff's position could reasonably expect that the particular defendant should be excluded"].)

Defendants' claim, that a "complete expectation of privacy" is necessary to recover for intrusion, thus fails as inconsistent with case law as well as

with the common understanding of privacy. Privacy for purposes of the intrusion tort must be evaluated with respect to the identity of the alleged intruder and the nature of the intrusion. As seen below, moreover, decisions on the common law and statutory protection of *workplace* privacy show that the same analysis applies in the workplace as in other settings; consequently, an employee may, under some circumstances, have a reasonable expectation of visual or aural privacy against electronic intrusion by a stranger to the workplace, despite the possibility that the conversations and interactions at issue could be witnessed by coworkers or the employer.

In *Walker* v. *Darby* (11th Cir. 1990) 911 F.2d 1573, three postal supervisors, pursuing a personal vendetta against a postal worker, electronically intercepted the worker's conversations at his workstation, transmitting them to one of their offices. The plaintiff worker alleged a violation of the federal anti-wiretapping law, which prohibits, inter alia, the electronic interception of an oral communication made under circumstances justifying an expectation the communication would not be intercepted. (*Id.* at p. 1577; see 18 U.S.C. §§ 2510(2), 2511.) Although the plaintiff's workstation was in a shared space rather than a private office, the appellate court found a triable issue of fact as to whether the plaintiff had a reasonable expectation of privacy from electronic interception. "We agree that there is a difference between a public employee having a reasonable expectation of privacy in personal conversations taking place in the workplace and having a reasonable expectation that those conversations will not be intercepted by a device which allows them to be overheard inside an office in another area of the building. [¶] . . . [¶] . . . The [workstation] was located in an area shared with other workers. But while Walker might have expected conversations uttered in a normal tone of voice to be overheard by those standing nearby, it is highly unlikely that he would have expected his conversations to be electronically intercepted and monitored in an office in another part of the building." (*Walker* v. *Darby, supra,* at p. 1579, fn. omitted.)

Similarly, in *United States* v. *McIntyre* (9th Cir. 1978) 582 F.2d 1221, a city's chief of police and a lieutenant in the department directed two police officers to "bug" the assistant chief's office. The officers placed a briefcase containing a microphone in the assistant chief's office, by which means they monitored a conversation in the office. (*Id.* at p. 1223.) Convicted of criminally violating the anti-wiretapping law (18 U.S.C. §§ 2510(2), 2511), the chief and lieutenant contended on appeal that any expectation of privacy on the assistant chief's part was unreasonable, because at the time the conversation was intercepted the assistant chief's office door was open and a records clerk worked 15 feet away in an adjacent room. (*United States* v. *McIntyre, supra,* at p. 1224.) The court rejected that argument: "A business

office need not be sealed to offer its occupant a reasonable degree of privacy." (*Ibid.*) As in *Walker* v. *Darby, supra*, 911 F.2d at page 1579, the court thus treated aural privacy as a relative, rather than absolute, characteristic of the workplace.

*Doe by Doe* v. *B.P.S. Guard Services, Inc.* (8th Cir. 1991) 945 F.2d 1422 illustrates the existence of limited, but reasonable, *visual* privacy in the workplace. A fashion show was being held at a convention center. The organizers had set up a curtained dressing area for the models, unaware that the area was visible on one of the convention center's security cameras. Guards in the security control room used the surveillance camera to watch and videotape the models changing clothes. (*Id.* at p. 1424.) Nothing in the opinion suggests the curtained changing area, used by all the models and presumably accessible to the show's director and assistants, was a place of complete seclusion for any of the models. Nonetheless, the appellate court, in an action for common law invasion of privacy, had no difficulty discerning a reasonable expectation of privacy on the models' part, violated in this circumstance by a visual "invasion by strangers." (*Id.* at p. 1427; see also *Ali* v. *Douglas Cable Communications* (D.Kan. 1996) 929 F.Supp. 1362, 1382 [customer service representatives for cable companies cannot claim intrusion in employer's monitoring and recording business telephone calls, but could claim a reasonable expectation of privacy as to unannounced recording of personal telephone calls].)[3]

Defendants' cited cases on workplace privacy do not establish a contrary rule. None of them hold or demonstrate that employee privacy in the workplace is nonexistent if not complete. More particularly, none hold or demonstrate that a worker necessarily loses all reasonable expectation of privacy against covert media videotaping merely because the worker's interactions and conversations may have been witnessed by some coworkers.

---

[3]Because of the special considerations involved in defining the private citizen's protection against intrusion by the government and the government's unique interest in investigating and suppressing criminal activity, decisions discussing employees' expectations of privacy against government searches are not directly applicable to the common law privacy tort context. We do not suggest that the same standards necessarily apply to private intrusions as to government searches, or vice versa. We observe, however, that the United States Supreme Court has recognized, in the Fourth Amendment context, that even employees without personal offices may have a reasonable, but limited, expectation of privacy against intrusions by strangers to the workplace. (See *Mancusi* v. *DeForte* (1968) 392 U.S. 364, 369 [88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154] [Union employee who shared a single large office with several other union officials had a privacy interest in the office sufficient to challenge its warrantless search by state officers: "[I]f DeForte had occupied a 'private' office in the union headquarters, and union records had been seized from a desk or a filing cabinet in that office, he would have had standing," and "the situation was not fundamentally changed because DeForte shared an office with other union officers. DeForte still could reasonably have expected that only those persons and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups."].)

In *Marrs* v. *Marriott Corp.* (D.Md. 1992) 830 F.Supp. 274, the defendant employer installed a video camera monitoring one worker's desk to investigate apparent tampering with material in a locked drawer. The plaintiff, a coworker caught on the videotape picking the lock on the desk drawer and terminated as a result, alleged, among many other causes of action, an invasion of his privacy in the videotaping. The district court found the cause of action could not survive summary judgment because there was "no support for the conclusion that Marrs had a reasonable expectation of privacy in an open office." (*Id.* at p. 283.) The court's holding that one employee did not have a reasonable expectation of privacy against the *employer's* filming of events at another employee's desk says nothing about whether an employee's personal interactions in the workplace may reasonably be considered private as against covert filming by an agent for an entity other than the employer, as, in this case, a television network.

Like *Marrs* v. *Marriott Corp.*, *Vega-Rodriguez* v. *Puerto Rico Telephone Co.* (1st Cir. 1997) 110 F.3d 174 and *Thompson* v. *Johnson County Community College* (D.Kan. 1996) 930 F.Supp. 501 also are distinguishable in that they involved video surveillance by the *employer* over shared workspaces. In both these cases, moreover, the employers were public entities, and the plaintiffs' challenges were based on the Fourth Amendment, making these decisions directly inapplicable to the question of private intrusion. (See fn. 3, *ante.*)

*PETA* v. *Bobby Berosini, Ltd.* (1995) 111 Nev. 615 [895 P.2d 1269] concerned the claim of an animal trainer that his privacy was invaded by nonconsensual videotaping of his preparations backstage before a show. The court found that the videotaping did not intrude on the privacy the trainer claimed to expect from preshow distraction and interference and, therefore, found it unnecessary to discuss whether his expectation of privacy was reasonable. (*Id.* at pp. 1280-1281 & fn. 20.) The decision is, therefore, not authority on the reasonableness question.

*Kemp* v. *Block* (D.Nev. 1985) 607 F.Supp. 1262 (*Kemp*), upon which defendants also rely, involved one worker's unconsented-to taping of a loud workplace argument between a coworker and his foreman. The district court granted summary judgment on an invasion of privacy claim brought by the coworker: "It seems quite clear that both [the plaintiff and his foreman] argued in loud voices. The defendant and the other coworkers who overheard the argument were in a place they had a right to be, namely the instrument shop. . . . The relatively small size of the instrument shop and its lack of interior walls further indicate that an expectation of privacy within it would not be objectively reasonable." (*Id.* at p. 1264.) We have no quarrel

with the *Kemp* court's conclusion that one who argues loudly in a small, undivided workplace cannot reasonably expect aural privacy in the conversation vis-à-vis the coworkers who share the space.

The workplace status of the recording defendant in *Kemp* is not comparable to that of defendant Lescht in this case. The defendant coworker in *Kemp* shared a relatively small instrument shop with the plaintiff and several other workers. For several months the plaintiff and the shop foreman had been having recurring oral disputes, but the plaintiff "had persistently denied" they "amounted to arguments." (*Kemp, supra,* 607 F.Supp. at p. 1263.) The defendant recorded the dispute between the plaintiff and their foreman "to prove to the plaintiff that he actually did argue." (*Ibid.*) After taping the argument, the defendant, in accord with his intent, showed the plaintiff and the foreman the tape. (*Ibid.*) Stacy Lescht, by contrast, worked in PMG's Los Angeles office only a few days—only as long as it took to meet, talk to and covertly videotape conversations with many of the other psychics, and only for that purpose. While she may have functioned as an employee of PMG when she took phone calls as a telepsychic, she acted solely as an agent of ABC when she talked with and secretly recorded the other psychics. That Mr. Kemp's reasonable expectations of privacy in the workplace did not extend to protection against a longtime coworker recording his noisy argument with a foreman, in order to resolve a workplace dispute, does not imply that Sanders's reasonable expectations do not extend to protection against videotaping by an agent of ABC, planted to collect videotape for use in a national television broadcast.

Finally, defendants rely on *Com.* v. *Alexander* (1998) 551 Pa. 1 [708 A.2d 1251] (*Alexander*) and *Desnick* v. *American Broadcasting Companies, Inc.* (7th Cir. 1995) 44 F.3d 1345 (*Desnick*). Both involved investigations into suspected misconduct by doctors; the investigation was by ABC in *Desnick* and by the Philadelphia police in *Alexander*. In both cases, patients or those posing as such, acting for the investigators, covertly recorded or videotaped the doctors' conversations with the patients in the doctors' offices. (*Alexander, supra,* at pp. 1252-1253; *Desnick, supra,* at p. 1348.) Both courts rejected claims the taping illegally invaded the doctors' privacy.

In *Desnick*, the question was whether the covert videotaping by "testers" posing as patients was a tortious invasion of privacy. The appellate court held it was not, partly because "the only conversations that were recorded were conversations with the testers themselves." (*Desnick, supra,* 44 F.3d at p. 1353.) "The test patients entered offices that were open to anyone

expressing a desire for ophthalmic services and videotaped physicians engaged in professional, not personal, communications with strangers (the testers themselves)." (*Id.* at p. 1352.)[4]

The *Desnick* court characterized the doctor-patient relationship as one between a service provider and a customer and therefore viewed these parties' conversations in the medical office as essentially public conversations between strangers. We need not agree or disagree with this characterization in order to see that it renders the decision's reasoning inapplicable to the question before us. We are concerned here with interactions between coworkers rather than between a proprietor and customer. As the briefed question is framed, the interactions at issue here could not have been witnessed by the general public, although they could have been overheard or observed by other employees in the shared workplace.

*Alexander, supra,* 708 A.2d 1251, involved the Pennsylvania state constitutional protection against unreasonable government searches, rather than the privacy element of the intrusion tort, and is directly inapplicable for that reason. (See fn. 3, *ante.*) In addition, *Alexander,* decided by a court of only six justices, had no majority on the expectation of privacy question. (See *Alexander, supra,* at p. 1258 (conc. opn. of Zappala, J.) [physician defendant had a "highly protected expectation of privacy" in communications occurring in his medical office, but the constitutional prerequisites for a valid interception of such communications were met].) Even if it contained an applicable holding, moreover, the plurality opinion would not support defendants' position in the present case. Like *Desnick, Alexander* is premised on a

---

[4]*Desnick,* like the present case, arose out of ABC's use of hidden cameras in an investigation for its *PrimeTime Live* program. Defendants and their amici curiae also cite two federal trial court decisions involving *PrimeTime Live* undercover camera teams: *Russell* v. *American Broadcasting Company, Inc.* (N.D.Ill. 1995) 1995 WL 330920 [23 Media L. Rep. 2428] (*Russell*) and *Medical Laboratory Management* v. *American Broad.* (D.Ariz. 1998) 30 F.Supp.2d 1182 (*Medical Laboratory*). The *Russell* court held that the plaintiff, a fish seller whose conversations about the freshness of her product, or lack thereof, were covertly recorded by a reporter posing as an employee, did not state a cause of action for intrusion under Illinois law because (1) in the district court's view, Illinois did not recognize such a cause of action and (2) even if such a tort existed, secretly recording a conversation with a coworker is not " 'offensive prying into the private domain of another,' " and the plaintiff was not harmed by the recording as such. (1995 WL 330920 at pp. *7-*8.) To the extent the second holding rested on the view that workplace conversations between coworkers can never be considered private from mass media interception (rather than simply on a finding that recording a fish market conversation about the marketing of fish, considered separately from the allegedly harmful broadcast, was not highly *offensive* to a reasonable person), it fails to persuade, as the court offered no reasoning or authority supporting a per se rule against workplace privacy. In *Medical Laboratory,* the alleged intrusion similarly was held nonactionable, in that case because it was not highly offensive in light of the importance of the investigation's subject and caused no injury apart from the related broadcast, as well as not invading a reasonable expectation of privacy on the investigation subject's part. (*Medical Laboratory, supra,* at pp. 1187-1192.)

characterization of the plaintiff doctor as a "proprietor" whose practice is " 'open to the public.' " (*Alexander, supra,* at p. 1257 (plur. opn. of Castille, J.).) As the *Alexander* plurality itself recognized, greater expectations of workplace privacy may be legally recognized when "the communication sought to be intercepted is strictly internal (such as communications which may arise between an employee and employer) . . . ." (*Ibid.*)

To summarize, we conclude that in the workplace, as elsewhere, the reasonableness of a person's expectation of visual and aural privacy depends not only on who might have been able to observe the subject interaction, but on the identity of the claimed intruder and the means of intrusion. (*Shulman, supra,* 18 Cal.4th at pp. 233-235; *Dietemann* v. *Time, Inc., supra,* 449 F.2d at p. 249; *Huskey* v. *National Broadcasting Co., Inc., supra,* 632 F.Supp. at pp. 1287-1288; *Nader* v. *General Motors Corporation, supra,* 307 N.Y.S.2d at p. 655; *Pearson* v. *Dodd, supra,* 410 F.2d at p. 704; *Walker* v. *Darby, supra,* 911 F.2d at p. 1579.) For this reason, we answer the briefed question affirmatively: a person who lacks a reasonable expectation of complete privacy in a conversation, because it could be seen and overheard by coworkers (but not the general public), may nevertheless have a claim for invasion of privacy by intrusion based on a television reporter's covert videotaping of that conversation.

Defendants warn that "the adoption of a doctrine of *per se* workplace privacy would place a dangerous chill on the press' investigation of abusive activities in open work areas, implicating substantial First Amendment concerns." (Italics in original.) We adopt no such per se doctrine of privacy. We hold only that the possibility of being overheard by coworkers does not, as a matter of law, render unreasonable an employee's expectation that his or her interactions within a nonpublic workplace will not be videotaped in secret by a journalist. In other circumstances, where, for example, the workplace is regularly open to entry or observation by the public or press, or the interaction that was the subject of the alleged intrusion was between proprietor (or employee) and customer, any expectation of privacy against press recording is less likely to be deemed reasonable. Nothing we say here prevents a media defendant from attempting to show, in order to negate the offensiveness element of the intrusion tort, that the claimed intrusion, even if it infringed on a reasonable expectation of privacy, was "justified by the legitimate motive of gathering the news." (*Shulman, supra,* 18 Cal.4th at pp. 236-237.) As for possible First Amendment defenses, any discussion must await a later case, as no constitutional issue was decided by the lower courts or presented for our review here.

*Question 2: Did the jury's findings in the first phase of trial, on liability under section 632, legally preclude maintenance of a common law intrusion claim?*

*Answer: No.*

The class of "confidential communications" protected from interception under section 632 is defined as follows: "The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (§ 632, subd. (c).)

The trial court used this definition to formulate two questions for the jury's special verdict after the first phase of trial, which was limited to the question of liability under section 632. The questions, together with the jury's answers, are quoted here as they appear in the minutes:

"Question No. 1: Did the communications of plaintiff Mark Sanders, which were electronically recorded by Hat Cam, include any communications carried on in circumstances which reasonably indicate that plaintiff Mark Sanders desired such communications be confined to the parties thereto?

"Answer: YES.

"Question No. 2: Were the communications which gave rise to the 'yes' answer to Question No. 1 made in circumstances in which the parties to the communication may reasonably have expected that the communications may have been overheard?

"Answer: YES."

Defendants contend, and the Court of Appeal agreed, that the jury's answer to the second question precluded any liability for common law intrusion because, by its answer, the jury determined plaintiff had no reasonable expectation of privacy in the interactions Lescht secretly videotaped. We disagree. The evidence and argument indicating that the Sanders-Lescht conversations could be overheard related only to possible overhearing by coworkers. There was no evidence the public was invited into the PMG Los

Angeles office, or that the office was visited by the press or other public observers on a routine basis or was ordinarily subject to videotaped surveillance by the mass media. Nor did defense counsel so argue to the jury; his argument, instead, was simply that the evidence showed the physical circumstances of the Sanders-Lescht conversations made it possible, and indeed likely, the conversations would be overheard by coworkers in other cubicles or passing in the aisles between cubicles. In light of this evidence and argument, the jury's finding cannot reasonably be construed to negate *all* reasonable expectations of privacy by plaintiff in his interactions with Lescht.

As we explained in our discussion of the first briefed question, the fact that coworkers may have observed a workplace interaction does not as a matter of law eliminate all expectations of privacy the participants may reasonably have had vis-à-vis covert videotaping by a stranger to the workplace. For this reason, the jury's finding as to an expectation of being overheard by coworkers did not as a matter of law preclude imposition of liability for common law intrusion. The trial court correctly denied defendants' midtrial motions for dismissal, nonsuit, and summary judgment.

*Question 3: Were the jury instructions in the second phase of trial, on liability for intrusion, prejudicially erroneous?*

*Answer: No.*

In the second phase of trial, the court gave, among others, the following jury instructions (numbered for reference in the discussion that follows):

"[1] The essential elements of [an intrusion] claim are, one, the defendant intentionally intruded physically or otherwise upon the private affairs or concerns of the plaintiffs by photographing plaintiffs with hat cams, and, two, the intrusion was substantial and of a kind that would be highly offensive to an ordinarily reasonable person."

"[2] The tort of invasion of privacy includes intrusions by clandestine photography of a person in his workplace if photographs are secretly taken of plaintiff without his or her consent in circumstances where a reasonable person would reasonably expect that the particular defendant would be excluded."

"[3] Employees take the risk that others present may not be what they seem to be, and that what is heard and seen at a work place may be repeated outside the workplace. But employees in a work place not open to the public

do not necessarily take the risk that what is heard and seen will be transmitted by photography to the public at large."

■ Defendants complain, first, that paragraph 1 omits the phrase "solitude or seclusion," found in the standard instruction upon which the paragraph was based. BAJI No. 7.20 (8th ed. 1994 bound vol.) describes the first element of the intrusion tort as intentional intrusion "upon the solitude or seclusion, private affairs or concerns of the plaintiff." While defendants did not object below specifically to the omission of the words "solitude or seclusion," they did request a version of BAJI No. 7.20 that included the phrase; they now contend the court should have given the requested instruction rather than draft its own.

Although this court, drawing on the Restatement's description of the tort, has used the same phrase (*Shulman, supra,* 18 Cal.4th at p. 231), "solitude or seclusion" is not a unique or essential label for a reasonable expectation of privacy. In any event, to the extent the phrase denotes anything different from the "private affairs or concerns" required under the court's instruction, defendants' requested standard instruction, requiring only an intrusion on the plaintiff's "solitude or seclusion, private affairs *or* concerns," delineates liability *broader* than the court's own instruction. The court's use of its own special instruction, therefore, could not have prejudiced defendants.

Second, defendants complain generally of paragraphs 2 and 3, which were written by the court and given over defense objection. Defendants contend that by these instructions the court "completely abandoned the requirement of a reasonable expectation of privacy by substituting for it the expectation of not being surreptitiously photographed. By giving its special jury instructions, the trial court effectively directed the jury to determine that ABC's recording of Sanders was a *per se* invasion of privacy." (Italics in original.)

Defendants' arguments are not well taken. The court did not direct any finding as to whether plaintiff enjoyed a reasonable expectation of privacy in his interactions with Lescht. The disputed instructions merely focused the jury's inquiry on the question whether it was reasonable for plaintiff to expect, in the circumstances of his particular workplace, that an interaction between coworkers would not be subject to covert videotaping by a television news producer. Because, as we have explained, the reasonableness of a privacy expectation must be assessed in reference to the identity of the intruder and the nature of the claimed intrusion, the proper question for the jury to decide was, indeed, whether plaintiff could reasonably expect he would not be secretly videotaped in his internal workplace interactions by a representative of the mass media.

■ Defendants complain particularly of the instruction, in paragraph 3, that "employees in a work place not open to the public do not necessarily take the risk that what is heard and seen will be transmitted by photography to the public at large." Under the analysis contained in our answer to the first briefed question, however, this instruction correctly stated the law. An employee's workplace interactions, though perhaps witnessed by other workers, are not *"necessarily"* open to videographic capture for the purpose of public display if the workplace itself is not generally open to public view.

We therefore conclude the challenged instructions were not prejudicially erroneous. By so holding, and by our earlier conclusion that the superior court did not err in refusing to dismiss plaintiff's cause of action for common law intrusion simply because of the jury's findings on the section 632 claim, we express no opinion on other procedural or evidentiary questions raised below, on the types and amounts of damages and costs awarded, or, indeed, on any of defendants' appellate claims other than those we have expressly addressed. Other claims are not within the limited scope of our review, but may, if properly presented, be addressed by the Court of Appeal on remand.

#### DISPOSITION

The judgment of the Court of Appeal is reversed, and the cause is remanded to that court for further proceedings consistent with our opinion.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.