Filed 12/6/23 Scallon v. Arche CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAMES SCALLON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LORI ARCHE et al.,<br><br>    Defendants and Respondents. | B325927<br><br>(Los Angeles County<br>Super. Ct. No. 22LBCV00168) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge. Affirmed.

Weeks Law Firm and Stephen Weeks for Plaintiff and Appellant.

Marchetti Law, Frank E. Marchetti; Manning & Kass, Ellrod, Ramirez, Trester, Sharon S. Jeffrey and Lacey N. Sipsey for Defendants and Respondents.

_____

Plaintiff and appellant James Scallon challenges the order granting the special motion to strike (anti-SLAPP)[1] made by defendants and respondents Lori Arche and Daniel Arche. The order struck the fourth, seventh, eighth, and ninth causes of action from Scallon's first amended complaint. We conclude the Arches showed the claims in these causes of action arose from conduct protected by Code of Civil Procedure section 425.16, and appellant failed to establish there was a probability he would prevail on the claims.[2] We affirm the order.

## BACKGROUND

Scallon entered into a residential rental agreement with Christopher Spencer for the property located on Rivo Alto Canal, Long Beach, California. The agreement was to terminate on October 15, 2020. Following the termination Scallon remained in possession on a month-to-month tenancy per the agreement.

Approximately one year later the Arches purchased the property from Spencer, intending to use it as their family home. The Arches had been told Scallon had agreed to a buy-out offer of $21,000. However, when the money was tendered Scallon refused it and did not vacate the residence. The Arches raised the offer to $30,000, but Scallon declined and informed them he did not intend to leave.

The Arches were unable to evict Scallon due to the eviction moratorium issued because of the COVID-19 outbreak. Due to

---

[1] SLAPP stands for strategic lawsuit against public participation.

[2] All further unattributed code sections are to the Code of Civil Procedure.

the inability to move into the home, the Arches rented various locations. Consequently the Arches lobbied for legislative changes and started a Change.org petition to obtain support for amending the eviction moratorium.

The Arches also spoke to news reporters about the eviction moratorium and their lobbying efforts. On April 16, 2021, CBS Broadcasting Inc. (CBS) interviewed the Arches about their inability to move into their home because of the eviction moratorium. The segment was posted online and included a news story with the title *Long Beach Couple Buys Multi-Million Dollar Home, But Can't Get Former Tenant to Leave.* The news article and broadcast referred to the neighborhood but did not identify Scallon by name or address.

After the news story, the Arches were contacted by lawyers and advised they had a right to occupy their property. Since Scallon would not voluntarily leave, the Arches served him with a 60-day notice to quit for owner occupancy. Scallon refused to move and claimed the eviction moratorium barred their efforts.

The Arches continued to lobby for changes that would allow them to evict Scallon from the property. They were again interviewed by CBS for a follow-up story that was published on June 21, 2021, titled *Some Homeowners Say They're Victims of Eviction Moratorium Rules as LA County Considers Extension.* The article did not refer to Scallon or his address.

Scallon filed this action on April 12, 2022, claiming the Arches and CBS had engaged in tenant harassment and invaded his privacy. The operative pleading is his first amended complaint (FAC), in which he alleges the Arches contacted multiple news agencies to run a story against him, provided CBS with his home address, posted the CBS story on multiple Web

sites, made comments supporting the CBS story, and commenced a meritless unlawful detainer action against him.

CBS and the Arches filed anti-SLAPP motions. The trial court granted CBS's motion and struck all claims directed at CBS. Judgment was entered in its favor on December 23, 2022. The trial court granted the Arches motion and struck the fourth, seventh, eighth, and ninth causes of action of the FAC on October 17, 2022.

Scallon filed a timely notice of appeal. While the appeal is pending the remaining claims against the Arches are stayed by stipulation and court order.

## CONTENTIONS ON APPEAL

Scallon challenges the order granting the Arches' anti-SLAPP motion on two grounds. First, he argues the Arches' speech was unlawful and not protected by the anti-SLAPP statute. Second, he argues the trial court erred by finding he had no probability of success on his claim of invasion of privacy by disclosing his home address.

## DISCUSSION

### I.    Applicable law and standard of review

A special motion to strike under section 425.16, also known as the anti-SLAPP statute, allows a defendant to seek early dismissal of a lawsuit involving a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

4

Actions subject to dismissal under section 425.16 include those based on "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"A SLAPP is subject to a special motion to strike 'unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) Thus, evaluation of an anti-SLAPP motion requires a two-step process in the trial court. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'" (*Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1035 (*Nygård*).) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"'Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."'" (*Nygård, supra,* 159 Cal.App.4th at p. 1036.)

## II.    The Arches' conduct was protected under section 425.16

The threshold question in evaluating the anti-SLAPP motion here is whether the claims against the Arches in the FAC arise from protected activity. (*Nygård, supra,* 159 Cal.App.4th at p. 1035.) In making this determination, the trial court may consider the pleadings and supporting and opposing affidavits setting forth the facts upon which the liability or defense is based. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

Since the Arches requested the court strike the fourth, seventh, eighth, and ninth causes of action in Scallon's pleading, they had the initial burden of showing these causes of action arose from protected activity. (§ 425.16, subd. (e).)

Scallon pleads in the fourth cause of action that the Arches violated Civil Code section 1940.2 by using menacing conduct that interfered with his quiet enjoyment of the premises. The purpose of this section is to prohibit a landlord's use of theft, extortion, interference with a tenant's quiet enjoyment, or trespass "'for the purpose of influencing a tenant to vacate a

6

dwelling.'" (*Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1300, quoting Civ. Code, § 1940.2, subd. (a).)

Scallon does not specifically identify the conduct that violated Civil Code section 1940.2; instead, he incorporated all his prior allegations. In these prior allegations, Scallon alleges the Arches harassed him by starting a petition on Change.org to obtain support for evicting him and by contacting reporters to write stories about his refusal to leave the premises. Scallon also alleges the Arches knew they were not permitted to evict him due to the moratorium that existed because Los Angeles County and the State of California had enacted protections against certain evictions in response to the COVID-19 pandemic. In their motion, the Arches provided facts explaining they started the petition and made statements to reporters to support an effort to lobby public officials for amendments to the eviction moratorium.

Scallon's allegations and the Arches' evidence demonstrate that Scallon's claims arise from the written and oral statements made by the Arches in a place open to the public or a public forum, i.e., statements in a petition made on a public Web site and statements made to reporters for broadcast on public airwaves or publication on a Web site open to the public. The statements were made in connection with the eviction moratorium, an issue of public interest as the efforts by public entities to prevent eviction of tenants during the pandemic had unintended economic consequences for landlords and property owners. Their statements were open to the public or a public forum. Therefore the statements were made in connection with an issue of public interest and are protected speech, as defined by section 425.16, subdivision (e)(3).

7

Additionally, the claims arise from the Arches' efforts to persuade public officials to allow tenant evictions by owners seeking to occupy a single-family residence. This is conduct in furtherance of their constitutional right to petition or their right to free speech in connection with the public issue of balancing protections for tenants and landlords' rights during a pandemic. The Arches' statements are protected speech as defined by section 425.16, subdivision (e)(4). Therefore, the claims in the fourth cause of action arise from speech protected by the anti-SLAPP statute.

As to the seventh, eighth, and ninth causes of action, each is based on claims the Arches invaded Scallon's privacy by disclosing his address, providing photographs of his home, and identifying him as a "former tenant" in the statements made on public Web sites and to the CBS reporters.These are written and oral statements made in a public forum on the public issue of eviction moratoriums as well as conduct in furtherance of the rights of petition and to free speech. Thus, the claims in the seventh, eighth, and ninth causes of action also arise from speech protected under section 425.16, subdivision (e)(3) and (4).

Scallon counters that the speech here is not protected under section 425.16 because it was illegal. A defendant is precluded from using a motion to strike under section 425.16 when that defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).) In *Flatley*, the speech was a communication via letter that the defendant would accuse Flatley of crimes unless he paid a minimum of $1 million. (*Id.* at p. 330.) The court concluded this constituted criminal extortion as a

matter of law and was not protected by the anti-SLAPP statute. (*Ibid*.)

This exception is limited because the term "illegal" in *Flatley* was intended to mean criminal conduct, not merely violations of any statute. (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.) Further, it applies only when there is uncontroverted evidence that the conduct was illegal. (*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 711.)

Scallon claims the Arches violated Penal Code section 653.2.[3] Nothing in the record conclusively establishes that the Arches had the necessary mental state of intending to place Scallon in fear of his safety when they made their petitioning efforts. On the contrary, the evidence that they made efforts to seek changes to the eviction moratorium shows that their intent was otherwise.

Scallon also argues the Arches violated Los Angeles County Charter, section 8.52.130—Retaliatory Eviction and Anti-Harassment. Under section 8.52.130, subdivision B.2.i., a landlord may not "in bad faith" release information protected by the tenant's right to privacy, except as required or authorized by law. Nothing in the record conclusively establishes the Arches acted in bad faith when they made their petitioning efforts. As noted above, their intent is controverted because they offer facts showing they were seeking public support for changes to the eviction moratorium.

---

[3]     Penal Code section 653.2 makes it a misdemeanor to electronically distribute personal identifying information with the intent to place another person in reasonable fear for his or her safety.

9

Therefore, Scallon failed to show this limited exception to section 425.16 applies. As a result, the analysis proceeds to the second prong.

## III. Scallon failed to show there was a probability he would prevail

Since the Arches met their initial burden, Scallon must then show a probability of prevailing on his claims. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.) The Arches' motion was directed at the fourth, seventh, eighth, and ninth causes of action. Scallon can satisfy his burden by demonstrating that each of these causes of action is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by Scallon is credited. (*Ibid.*)

### A. *Scallon did not discuss the fourth or ninth causes of action*

Scallon does not show how he met his burden on the fourth cause of action (violation of Civil Code section 1940.2). This claim includes allegations that the Arches tried to cause Scallon to vacate the premises by creating a petition to obtain public support for his eviction and by contacting reporters to write stories about Scallon's refusal to move out. Scallon does not show the claim was legally sufficient or supported by a sufficient prima facie showing of facts. He identifies no facts showing the Arches violated Civil Code section 1940.2. On appeal, he offers no grounds to find he met his burden on this claim.

Nor does Scallon discuss how he met his burden on the ninth cause of action, which claims the Arches invaded his privacy by describing him as a "former tenant." This is a "false

10

light" claim, which is a species of invasion of privacy.[4] (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1264.) The claim is based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. (*Ibid.*) Scallon does not show he pleaded the claim sufficiently or that he has evidence showing it was offensive to a reasonable person for the Arches to publish he was a "former tenant." He does not identify facts showing the Arches knew or recklessly disregarded the falsity of calling him a "former tenant" or that using this phrase would place Scallon in a false light.

Thus, Scallon did not meet his burden under section 425.16 on the fourth or ninth causes of action.

**B.** ***Scallon cannot establish the seventh and eighth causes of action because his residential address is not protected by the right to privacy***

Scallon claims in his seventh and eighth causes of action that the Arches invaded his right to privacy by disclosing his home address to CBS, and this information appeared on Change.org, Facebook, and three Web sites operated by CBS. The seventh cause of action is a public disclosure claim and seeks

---

[4] California courts have recognized four distinct types of right of privacy claims: "(1) intrusion upon one's physical solitude or seclusion; (2) public disclosure of private facts; (3) false light in the public eye; and (4) appropriation." (*Forsher v. Bugliosi* (1980) 26 Cal.3d 792, 808.) Here, Scallon uses three—public disclosure, intrusion, and false light—in his seventh, eighth, and ninth causes of action.

11

remedies for the (1) public disclosure (2) of a private fact (3) that would be offensive and objectionable to the reasonable person and (4) is not of legitimate public concern. (*Jackson v. Mayweather, supra*, 10 Cal.App.5th at p. 1256.) The eighth cause of action is an intrusion claim and seeks remedies for the (1) intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person. (*Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 914.)

The "private fact" in Scallon's claims is his residential address. He argues this is a "private fact" based on the analysis in *M. G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623 (*M. G.*). In *M. G.*, Time Warner's media organizations used a photograph of a Little League team, whose coach had pleaded guilty to molesting children, to illustrate a story about adult coaches who had sexually abused children. The individuals in the photograph sued Time Warner for invasion of privacy. Time Warner filed an anti-SLAPP motion to argue that publishing the photograph was not a disclosure of a private fact because the photograph had been taken on a public baseball field and portrayed the plaintiffs' participation in a public sport. The argument was rejected because plaintiffs showed the photograph was intended to be private and only for dissemination among family and friends. Thus, use of the photograph was disclosure of the private fact that plaintiffs were members of a team whose coach had pleaded guilty to molesting children.

Scallon's residential address is not a private fact like the photograph of a children's team in *M. G.* A residential address is readily discoverable through searches of phone books or public Web sites. Scallon's address was also identified in the lease agreement. Unlike *M. G.*, where the facts showed an intent to

keep the photograph private, Scallon offers no similar evidence showing he intended to keep his address private, such as negotiating for a term in the lease to keep his identity private.

In addition the Arches were disclosing the address of property they had purchased. Scallon offers no authority showing that his right to privacy prevented the Arches from disclosing their property's address to a reporter interviewing them about the eviction moratorium.

Scallon also sought support in *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140 (*Dziubla*) that involved the disclosure of a residential address in a doxing case.[5] In *Dziubla*, the parties were involved in two cases. The first concerned a failed loan agreement. The second arose from defendant's efforts to obtain funds for the first case by publishing an "Emergency Action Alert" to 200,000 members of a gun enthusiast group, claiming the plaintiff was a "Gun-Grabbing" con man. The publication identified the plaintiff's residential address and included pictures of his house and a close-up image of the plaintiff's face.

In the second case the plaintiff sought damages for the "Emergency Action Alert," pleading theories based on criminal threats, defamation, false light, negligent infliction of emotional distress, injunction, and violation of the Ralph Civil Rights Act of 1976, under Civil Code section 51.7, for harassment based on political affiliations. The defendant filed an anti-SLAPP motion to strike these claims, arguing they arose from communications about the first case and were barred by the litigation privilege. The motion was granted with regard to all claims except the

---

[5] "Doxing" is an Internet-based form of harassment that involves posting a target's private personal information online so it can be used by other parties to attack the targeted individual.

13

injunctive and civil rights claims. The court found the civil rights claim based on disclosing the plaintiff's personal information to harass the plaintiff for his political affiliations was not protected by section 425.16; i.e., it did not arise from written or oral statements in the first case, and it had a probability of success because the litigation privilege did not apply.

Scallon offers no grounds why we should apply these holdings in the present case. He identified no facts showing the Arches disclosed his address with an intent to violate his civil rights or harass him. Further, *Dziubla* does not hold that a residential address is a private fact for the purpose of establishing a right to privacy claim. Scallon, therefore, has failed to show he has a probability of prevailing on his claim that his residential address was a "private fact."

Moreover, Scallon does not show he has a probability of prevailing on his eighth cause of action for intrusion into his privacy by disclosing his residential address. To establish this claim, Scallon must show the Arches "'penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff.'" (*Sanders*, *supra*, 20 Cal.4th at pp. 914-915.) The Arches possessed Scallon's residence address because they bought the property. Scallon identifies no allegations or evidence showing the Arches penetrated a zone of privacy or obtained unwanted access when they obtained the address of the property they had purchased. Scallon, therefore, did not meet his burden under section 425.16 of demonstrating a probability of prevailing on his seventh or eighth causes of action.

As a result, the trial court correctly granted the Arches' anti-SLAPP motion because the Arches showed that Scallon's claims against them arose from their engagement in speech

14

protected by section 425.16 and Scallon did not show he had a probability of prevailing on his claims.

## DISPOSITION

We affirm the trial court's order. Respondents, Lori Arche and Daniel Arche, are awarded their costs of appeal.

_____

CHAVEZ, J.

We concur:

_____

LUI, P. J.

_____

ASHMANN-GERST, J.