2012 Ark. App. 24

**David COOMBS, Appellant**

v.

**J.B. HUNT TRANSPORT, INC.;**
**Rich Allensworth; and Mark**
**Emerson, Appellees.**

**No. CA 11–517.**

Court of Appeals of Arkansas.

Jan. 4, 2012.

---

Joe Dan Byars Jr., Fort Smith, for appellant.

Christy Comstock, Fayetteville, for appellee.

CLIFF HOOFMAN, Judge.

David Coombs appeals from a summary judgment in favor of appellees J.B. Hunt Transport, Inc. (JBH), Rich Allensworth, and Mark Emerson, arguing that material issues of fact remain on his claims for invasion of privacy, outrage, negligent retention, and wrongful discharge. We agree that reversal is warranted on the invasion-of-privacy claim and on the question of whether JBH may be held vicariously liable for Allensworth's and Emerson's actions. We affirm the remainder of the summary-judgment order.

## I. *Facts*

The following facts are derived from the pleadings, depositions, and other materials presented to the circuit court in connection with appellees' motion for summary judgment. As required by our standard of review, we consider the facts in the light most favorable to Coombs as the party resisting the motion. *Myers v. Coo-* *per Clinic*, 2011 Ark. App. 435, 384 S.W.3d 622.

Coombs is a former employee of JBH. In May 2007, he and several other employees attended a "team-building" retreat in Kansas City, Missouri. The event was organized by JBH vice-presidents Allensworth and Emerson, who were Coombs's supervisors. Attendance was mandatory, and the JBH employees traveled to Kansas City in rented vans. According to Coombs, he rode in a van with Emerson, who provided beer for the trip. He was also assigned to share a hotel room with Allensworth.

During the event, the group attended a Kansas City Royals baseball game. Afterwards, some attendees, including Coombs, went to local bars and clubs. Alcoholic beverages were consumed, and Coombs, by his own admission, had too much to drink. Sheila Savage, a fellow employee, said that, as her group was leaving one bar, Coombs walked to a wooded area just outside the parking lot to urinate. A police officer confronted Coombs and threatened to arrest him, but Savage defused the situation. The group then returned to the hotel.

Upon arriving at the hotel, Coombs went to his room, brushed his teeth, and laid down on the floor to sleep, taking off only his shoes. He closed the door to the room but did not place a privacy card on the door or employ any other means to restrict access to the room. Later, Allensworth came into the room with Emerson and saw Coombs either sleeping or "passed out" on the floor. According to them, Coombs was in his underwear, but Coombs later denied getting undressed. Allensworth used a pen to write "help me" on Coombs's leg and possibly wrote another message on Coombs's forehead. Emerson sprayed shaving cream on Coombs's face and placed a cigarette in his mouth, then took

photographs of Coombs with his cell phone. Emerson also called several other employees, including female employees, and asked them to come to the room. Once there, they saw Coombs on the floor. One employee said that Allensworth was tugging at Coombs's underwear. Other employees tried to clean Coombs up, then left him on the floor.

Coombs awoke the next morning in bed with no clothes on. He remembered none of what had happened in the hotel room. According to Coombs, Emerson later showed him and other employees cell-phone photographs depicting Coombs in various states of undress, down to his underwear. Upon returning to work the following Monday, Allensworth and Emerson instructed those who had attended the event to say nothing about what had happened.

Despite those instructions, the incident came to light around the end of 2007 when a JBH employee, Mike Rice, wrote a memo to a company executive about the Kansas City trip. JBH conducted an investigation, then terminated Allensworth and reprimanded Emerson. Coombs was also reprimanded, presumably for failing to report the incident, and his yearly salary was later reduced from $106,000 to $75,000. According to him, he was aware that salary cuts had been planned for some JBH employees but was initially told by Emerson not to worry about it.

In February 2008, Coombs left JBH and formed his own transportation company. This caused JBH to file a complaint against him (since dismissed) for violating a covenant not to compete. In response, Coombs counterclaimed against JBH and filed a third-party complaint against Allensworth and Emerson for invasion of privacy, outrage, negligent retention, and wrongful discharge, based on the events in Kansas City. JBH, Allensworth, and Emerson moved for summary judgment, which the circuit court granted. This appeal followed.[1]

## II. *Invasion of Privacy*

The tort designated as "invasion of privacy" embraces several causes of action. *Milam v. Bank of Cabot,* 327 Ark. 256, 937 S.W.2d 653 (1997). The particular action pled by Coombs was for invasion of privacy by "intrusion upon seclusion." Intrusion upon seclusion may occur in a variety of contexts, such as an improper search of a person's home, harassing telephone calls, improper photographing or videotaping of a person, opening another person's mail, or eavesdropping on private conversations by wiretapping or electronic devices. *See Wal–Mart Stores v. Lee,* 348 Ark. 707, 74 S.W.3d 634 (2002); *CBM of Cent. Ark. v. Bemel,* 274 Ark. 223, 623 S.W.2d 518 (1981); *see also Huskey v. Nat'l Broadcasting Co.,* 632 F.Supp. 1282 (N.D.Ill. 1986); J. Thomas McCarthy, *The Rights of Publicity & Privacy* § 1:20 (2d ed.2010). This form of privacy epitomizes the classic phrase "the right to be left alone." McCarthy at § 5:89; David A. Elder, *Privacy Torts* § 2:1 (2002).

To prove intrusion upon seclusion, a plaintiff must establish the following elements:

First, that he sustained damages;

Second, that the defendant intentionally intruded physically or otherwise upon plaintiff's solitude or seclusion and believed or was substantially certain that he lacked the necessary legal authority or personal permission, invitation, or

---

1. We dismissed a previous appeal for lack of a final order. *Coombs v. J.B. Hunt Transp.,*

valid consent to commit the intrusive act;

Third, that the intrusion was of a kind that would be highly offensive to a reasonable person, as the result of conduct to which a reasonable person would strongly object;

Fourth, that the plaintiff conducted himself in a manner consistent with an actual expectation of privacy; and

Fifth, that the defendant's intrusion was the proximate cause of the plaintiff's damages.

AMI Civil 420 (2011).

■ The trial court ruled that Coombs did not meet these elements as a matter of law because he was not "in his own bed" when the incident occurred; he was aware that he was sharing the room with another person; and he voluntarily "drank to the point where he became intoxicated." Coombs argues that he presented sufficient evidence to create genuine issues of material fact on these matters and thus avoid summary judgment. We agree.

■ Coombs clearly shared a room with a co-occupant, who had the right to enter the room and invite guests, but this does not end the inquiry. An intrusion may occur physically "or otherwise." AMI Civil 420. Thus, protection is afforded not just for the physical realm but for a person's emotional sanctum and to safeguard the notions of civility and personal dignity. *See generally Carter v. Innisfree Hotel,* 661 So.2d 1174 (Ala.1995); *Shulman v. Group W Prods.,* 18 Cal.4th 200, 74 Cal. Rptr.2d 843, 955 P.2d 469 (1998); *Hill v. Nat'l Collegiate Ath. Ass'n,* 7 Cal.4th 1, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994). Further, a person's visibility to some does not necessarily strip him of the right to remain secluded from others. *See Huskey, supra; Sanders v. Am. Broadcasting Cos.,* 20 Cal.4th 907, 85 Cal.Rptr.2d 909, 978 P.2d

67 (1999); *In re Marriage of Tigges,* 758 N.W.2d 824 (Iowa 2008); *Stessman v. Am. Black Hawk Broadcasting,* 416 N.W.2d 685 (Iowa 1987). The court in *Sanders* stated the following:

[P]rivacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law. Although the intrusion tort is often defined in terms of "seclusion" ... the seclusion referred to need not be absolute. Like "privacy" the concept of "seclusion" is relative. The mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone.

85 Cal.Rptr.2d 909, 978 P.2d at 72.

Here, Coombs produced evidence that Allensworth and his guest, Emerson, not only came into the hotel room but also invited others into the room for the purpose of looking at him in his debilitated state. They also wrote on his body, sprayed shaving cream on him, possibly removed some of his clothing, and took photographs of him and showed them to others. The alleged intrusion was therefore not limited to crossing the threshold of the hotel room. It encompassed acts that purportedly encroached upon Coombs's physical self and personal dignity. Consequently, we cannot say as a matter of law that no intrusion occurred.

Nor do we agree with appellees that the intrusion, if any, would not be highly offensive to a reasonable person. A fact-finder could view the acts of Allensworth and Emerson as an invasion of Coombs's bodily space during a time when he was unaware

of his surroundings and as making him an object of ridicule among his co-workers.

A factual issue also exists on the issue of whether Coombs conducted himself in a manner consistent with an actual expectation of privacy. Appellees rely on the fact that Coombs did not hang a privacy tag on the door of the hotel room to prevent Allensworth's entry; that he was intoxicated when he passed out on the floor of the hotel room; and that he had, earlier in the evening, relieved himself in the parking lot of a bar. While these factors might be considered by a jury in determining whether Coombs was conducting himself in a ₇manner that showed an expectation of privacy, we do not consider them conclusive on that point. Other factors indicate that Coombs *did* conduct himself in a manner consistent with an expectation of privacy. Realizing that he had consumed too much alcohol, he went to his hotel room, closed the door, lay down on the floor, and fell asleep, clothed in everything except his shoes. Under these circumstances, the proof could lead to different conclusions by the fact-finder as to Coombs's expectation of privacy, making summary judgment inappropriate. *See Vicentic v. Bishop,* 2011 Ark. App. 149, 2011 WL 693344.

We therefore reverse the summary judgment on Coombs's invasion-of-privacy claim.

### III. *JBH's Vicarious Liability*

Coombs argues that a factual question exists as to whether JBH is liable, by virtue of either respondeat superior or ratification, for the tortious conduct of Allensworth and Emerson. The circuit court found no basis for JBH's vicarious liability.

Under the doctrine of respondeat superior, an employer may be held liable for the acts of its employee if the employee was acting within the scope of his employment at the time of the incident. *Porter v.*

*Harshfield,* 329 Ark. 130, 948 S.W.2d 83 (1997). The question of whether an employee is acting within the scope of employment depends on whether the individual is carrying out the object and purpose of the enterprise as opposed to acting exclusively in his own interest. *Id.; J.B. Hunt Transp. v. Doss,* 320 Ark. 660, 899 S.W.2d 464 (1995).

In the present situation, the proof indicates that Allensworth and Emerson were "on the job" during the weekend of the retreat. They organized it and were in charge, attendance ₈was mandatory, and the point of the outing was for employees to interact. Still, employers are not always liable for any and all acts that an employee commits while on the job. In *Porter, supra,* a radiology firm was ruled not liable for the acts of an employee who sexually molested a patient during an ultrasound. Our supreme court held that the employee was not acting within the scope of his duties but that his act was "purely personal." A similar result was reached in *Regions Bank & Trust v. Stone County Skilled Nursing Facil.,* 345 Ark. 555, 49 S.W.3d 107 (2001). The question of an employer's liability, therefore, revolves around whether the employee's act was purely personal. Under the circumstances of this case, that presents a question of fact.

Coombs's evidence demonstrates that Emerson and Allensworth did not simply go into a room alone with him for their own purposes. Rather, as supervisors, they involved other employees in the activities by calling them into the room, allowing them to enter the room and view Coombs, and by taking photographs and showing them to other employees the following day. They also attempted to ensure that, after everyone had returned to work, the incident would not be revealed.

A case could therefore be made that something more than an element of personal titillation or gratification characterized Allensworth's and Emerson's actions. The actions could also signify an attempt to exercise supervisory authority, an attempt to engage in group bonding among employees, and an attempt to protect not only themselves but the company from any repercussions of the events. When an overlap of the business and the personal are present in an employee's actions, an employer may be vicariously liable under the doctrine of respondeat superior, depending on the circumstances. *Doss, supra.* Thus, summary judgment was inappropriate on this issue.

We affirm the summary judgment, however, as to ratification. When a principal has knowledge of the unauthorized acts of his agent and remains silent, he cannot thereafter be heard to deny the agency but will be held to have ratified the unauthorized acts. *Gordon v. Planters & Merchants Bancshares, Inc.,* 326 Ark. 1046, 935 S.W.2d 544 (1996). The undisputed proof is that JBH had no knowledge of Allensworth's and Emerson's conduct until late 2007, at which point it conducted an investigation and imposed sanctions. Coombs argues that because Allensworth and Emerson were officers of JBH, their knowledge, and the knowledge of others present in Kansas City, may be imputed to JBH to establish ratification. If that were the case, an employer would be considered to have automatically ratified any act of its officers or managers, whether or not the acts were authorized. We decline to broaden the concept of ratification to this extent.

### IV. *Outrage*

To establish a claim for outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Rees v. Smith,* 2009 Ark. 169, 301 S.W.3d 467. We have taken a strict approach and given a narrow view to the tort of outrage. *Travelers Ins. Co. v. Smith,* 338 Ark. 81, 991 S.W.2d 591 (1999).

Coombs argues that the circuit court erred in granting summary judgment on his outrage claim because questions of fact remained to be decided. While we agree that a factual question could exist on the issue of whether Allensworth's and Emerson's conduct was extreme and outrageous, we need not address that point because Coombs fell short on another essential element of the tort—he did not come forward with evidence to show that he sustained emotional distress so severe that no reasonable person could be expected to endure it.

Coombs's deposition testimony was that he was humiliated, frustrated, upset, and outraged; that he could not tell his wife what had happened; that he was afraid to speak to anyone about the trip; and that he lost sleep and had nightmares. He also stated that he had not been to a counselor. Such testimony does not rise to the level needed for mental anguish associated with outrage, even when viewed in the light most favorable to Coombs. Our courts have recognized that discomfort, upset, embarrassment, anxiety, loss of sleep, and depression do not meet the "mental distress" element of the tort of outrage. *See Kiersey v. Jeffrey,* 369 Ark.

220, 253 S.W.3d 438 (2007); *FMC Corp. v. Helton*, 360 Ark. 465, 202 S.W.3d 490 (2005); *Schmidt v. Stearman*, 98 Ark.App. 167, 253 S.W.3d 35 (2007). Compare *Rees, supra*, where summary judgment was reversed on a claim by the plaintiff that she required psychiatric care and counseling in addition to suffering a number of maladies due to the defendant's conduct.

## V. *Wrongful Constructive Discharge*

A constructive discharge occurs when an employer intentionally renders an employee's working conditions intolerable and thus forces him to resign. *Sterling Drug v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988). Further, an employee is wrongfully discharged if he is terminated for an act done in the public interest. *Id.* Coombs claims that he was constructively discharged in retaliation for "blowing the whistle on the unlawful and harassing conduct of Emerson and Allensworth." Coombs's claim, however, proceeds from a faulty premise. The facts do not show that Coombs was the "whistle blower" like the employee in *Oxford, supra*. Rather, another employee, Mike Rice, reported the incidents of the Kansas City trip to management. For this reason, we uphold the summary judgment on the constructive-discharge count.

## VI. *Negligent Retention*

Coombs argues that factual questions exist as to whether JBH negligently retained Allensworth as an employee. This theory of recovery comes about when an employer retains an employee but either knew, or through the exercise of ordinary care should have known, that the employee's conduct would subject others to an unreasonable risk of harm. *Saine v. Comcast Cablevision of Ark.*, 354 Ark. 492, 126 S.W.3d 339 (2003). In *Saine*, a summary judgment was reversed where a fac-

tual question existed as to Comcast's knowledge that an employee, who attacked a customer, had acted similarly toward another customer a year earlier. By contrast, the present case does not reveal the possibility that JBH knew or should have known that Allensworth might pose a risk of harm to others.

Coombs asserts that Allensworth was "previously accused of discriminatory and/or harassing behavior involving another employee of [JBH]." In fact, the only proof on this point was Allensworth's testimony that he was involved in a race or sex discrimination lawsuit at a JBH terminal in Alabama when "one of the employees ... alleged that she was passed over for promotion," and the case was settled. Coombs also states that JBH was notified of other complaints against Allensworth for "inappropriate language." Even if true, we do not see that such an allegation would serve to notify an employer that the employee would pose "an unreasonable risk of harm" to others.

## VII. *Conclusion*

We affirm the summary judgment as to Coombs's outrage, wrongful-discharge, and negligent-retention claims. We reverse and remand the summary judgment on Coombs's invasion-of-privacy claim and on the issue of whether JBH may be held vicariously liable on that claim through the doctrine of respondeat superior.

Affirmed in part; reversed and remanded in part.

GRUBER and GLOVER, JJ., agree.