DAVID M. GLOVER, Judge
Rick Holman appeals the Crawford County Circuit Court's grant of summary judgment to appellee Allstate Property and Casualty Insurance Company (Allstate) on his claims of negligent infliction of emotional distress and outrage. On appeal, Rick argues this court (1) should declare the tort of negligent infliction of emotional distress to be a viable claim in the present scenario; (2) should hold the tort of outrage to be a valid claim under the facts of this case; and (3) should hold Allstate's insurance policy covers damages for emotional harm under the policy definition of "bodily injury." We affirm the grant of summary judgment.
Procedural History
On July 5, 2015, at approximately 2:40 a.m., Rick, his wife, Joy, four of their children, and their daughters' friend were asleep in the Holman home when Anna Marie Flores, who was believed to be intoxicated, drove a vehicle owned by Kenneth Cummings into the home, causing damage.
Rick and Joy, individually and as the next friends of her daughter, Taylor Brooks, filed a complaint against Flores, Cummings, and Allstate.[1] It is undisputed Rick suffered no physical injury as a result of the incident, but Joy and Taylor alleged they sustained physical injuries. The claims of Joy and Taylor against Flores included negligence and willful and wanton conduct in the operation of a motor vehicle while impaired; their claims against Cummings included negligent entrustment and negligence in allowing Flores access to his keys. Rick's claims against Flores and Cummings were for negligent infliction of emotional distress and outrage (intentional infliction of emotional distress).
Allstate moved for partial summary judgment against Rick; in an order filed May 15, 2017, the circuit court granted Allstate's motion for summary judgment as to Rick's claim for negligent infliction of emotional distress but denied it as to his claim for outrage. After a motion to reconsider by Allstate, the circuit court issued a new order on July 12, 2017, dismissing with prejudice both of Rick's claims against Allstate. On July 19, 2017, the circuit court entered an order of dismissal with prejudice of the claims of Joy and Taylor against Allstate. However, this order specified that it did not in any way affect or dismiss the claims of Joy, Taylor, or Rick against Flores and Cummings.
On August 11, 2017, Joy and Taylor moved to dismiss without prejudice their causes of action against Flores and Cummings; Rick filed a separate notice of appeal the same day. An order was filed on August 18 dismissing without prejudice the causes of action of Joy and Taylor against *3 Flores and Cummings.[2] Rick filed a second notice of appeal on August 20, in which he abandoned any pending but unresolved claims.
Deposition Testimony
In his April 20, 2016 deposition, Rick agreed he suffered no physical injuries when Flores crashed into his home on July 5, 2015. However, he claimed emotional distress from the incident because of memories of a March 5, 1999 wreck in which he drove up on the burning remains of a motor-vehicle accident where his mother, his 18-month-old daughter, and his nephew were burned to death, and his oldest daughter remained in a coma for 30 days after the accident. Rick said the memories of the 1999 accident came flooding back to him when Kimberly, one of his daughters, came up to him after the 2015 incident, hugged him, and said, "Daddy, I almost died." Rick said he now saw his mother's truck every night in his dreams, sleeping was "rough" because his mind began to race at night, and not a day went by that he did not think about the 1999 accident. However, he and Joy had not considered moving. After the 1999 accident, Rick saw two therapists one time each. Rick did not continue with therapy because he did not believe he needed to talk to the therapists, and he did not want drugs. Rick stated he had continued to work regularly since the 2015 accident, and he still "did everything he was supposed to do."
Standard of Review
Summary judgment should be granted only when it is clear there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Cesena v. Gray , 2009 Ark. App. 143, 316 S.W.3d 257. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. Patrick v. Tyson Foods, Inc. , 2016 Ark. App. 221, 489 S.W.3d 683. On appeal, viewing the evidence in the light most favorable to the nonmoving party and resolving all doubts and inferences against the moving party, we determine if summary judgment was appropriate based on whether the moving party's evidence in support of its motion leaves a material fact unanswered. Cesena , supra. Our appellate review is not limited to the pleadings, as we also focus on affidavits and other documents filed by the parties; however, conclusory allegations are insufficient to create a factual issue in a summary-judgment situation. Patrick , supra.
Negligent Infliction of Emotional Distress
Rick first argues our court should hold the tort of negligent infliction of emotional *4 distress is a viable claim under the facts of the case. As he properly notes, Arkansas does not recognize the tort of negligent infliction of emotional distress. Dowty v. Riggs , 2010 Ark. 465, 385 S.W.3d 117 ; FMC Corp. v. Helton , 360 Ark. 465, 202 S.W.3d 490 (2005). In Dowty , our supreme court explained that in cases of negligence, if there is no physical injury, there can be no recovery for mental pain and anguish because it is deemed to be too remote, uncertain, and difficult to ascertain; however, when physical injury is suffered, mental pain and anguish must be considered because they are so intimately connected and too difficult to separate. Dowty , 2010 Ark. 465, at 6-7, 385 S.W.3d at 121.
Rick focuses on our supreme court's statement in Dowty that the majority of jurisdictions in the United States allow recovery for negligent infliction of emotional distress, and our supreme court might revisit the issue in the future. However, our supreme court has not yet seen fit to revisit this issue and create a new tort, and Dowty remains the law in Arkansas. Our court is without authority to overrule our supreme court's precedent and is obliged to follow the decision in Dowty. Farm Credit Midsouth, PCA v. Bollinger , 2018 Ark. App. 224, 548 S.W.3d 164 ; Watkins v. Arkansas Elder Outreach of Little Rock, Inc. , 2012 Ark. App. 301, 420 S.W.3d 477. We affirm the grant of summary judgment on the claim for negligent infliction of emotional distress.
Outrage
Rick next argues summary judgment should not have been granted on his outrage claim. We disagree.
The tort of outrage-also known as intentional infliction of emotional distress-opens an actor up to civil liability for committing extreme and outrageous conduct. Sawada v. Walmart Stores, Inc. , 2015 Ark. App. 549, 473 S.W.3d 60. To establish a claim for the tort of outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized society"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. Marlar v. Daniel , 368 Ark. 505, 509-10, 247 S.W.3d 473, 477 (2007).
The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. Brown v. Wyatt , 89 Ark. App. 306, 202 S.W.3d 555 (2005). Arkansas appellate courts give a narrow view to the tort of outrage and require clear-cut proof to establish the elements. Marlar , supra. Merely describing the conduct as outrageous does not make it so. Faulkner v. Arkansas Children's Hosp. , 347 Ark. 941, 69 S.W.3d 393 (2002). We recognize that "the tort of outrage should not and does not open the doors of the courts to every slight insult or indignity one must endure in life." Kiersey v. Jeffrey , 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007) (citing Crockett v. Essex , 341 Ark. 558, 19 S.W.3d 585 (2000) ).
Under the facts of this case, summary judgment was appropriate. The circuit court found Rick failed to establish any of the elements or to even create a genuine issue of material fact for the tort of outrage, including that the alleged conduct rose to the appropriate level or that the alleged mental or emotional damages or injuries were to the degree or severity *5 required by Arkansas law. Even viewing the evidence in the light most favorable to Rick, as we must, we hold he failed to come forward with evidence to show he sustained emotional distress so severe that no reasonable person could be expected to endure it.
In his deposition, Rick testified that after Flores had run the vehicle she was driving into his home on July 5, 2015, he began to dream every night about the accident in which his mother, daughter, and nephew were killed, and sleeping was "rough" because his mind begins "racing" before he goes to sleep. In his affidavit submitted in response to Allstate's motion for summary judgment, he asserted he suffered posttraumatic stress disorder and/or aggravation of posttraumatic stress disorder and had problems with anxiety, sleeping, emotional grief, recollection of prior events involving the death of his child, and other harm. However, he admitted in his deposition he was not taking any medication, had seen two different therapists only one time each and did not return for additional visits, had not discussed moving out of his house, and had not missed any work due to the incident.
In Coombs v. J.B. Hunt Transport, Inc. , 2012 Ark. App. 24, 388 S.W.3d 456, our court held that Coombs's loss of sleep and nightmares, coupled with humiliation, frustration, and being upset and anxious about his coworkers taking pictures of him on a business trip while he was sleeping or passed out in various states of undress and showing them to Coombs and other coworkers was not sufficient to show Coombs had sustained emotional distress so severe that no reasonable person could be expected to endure it. Earlier, in FMC Corp., Inc. v. Helton , our supreme court held that farmers whose wheat was quarantined had failed to demonstrate they had suffered emotional distress so severe that no reasonable person could be expected to endure it when they testified that they had experienced sleep loss, loss of appetite, weight loss, had begun taking antidepressants, and suffered anxiety, stating that such distress was the type "reasonable people may be faced with throughout their lives." 360 Ark. at 486, 202 S.W.3d at 505. Then, in Kiersey , supra , our supreme court held that while a mother whose son had been taken by his paternal grandmother for several days was upset, she was not so upset as to seek medical or psychological treatment, and while understandable, her distress was not so severe that no reasonable person could be expected to endure it. And the same year, in Schmidt v. Stearman , 98 Ark. App. 167, 253 S.W.3d 35 (2007), our court held that Schmidt's recurrence of depression and a fear of staying at his farm after Stearman had broken into the house Schmidt was living in and shot five of Schmidt's dogs to death did not satisfy the requirements for outrage.
Here, Rick had nightmares about the 1999 accident after Flores ran into his house, he had trouble sleeping, and he suffered with anxiety. While he had seen two therapists, he had attended only one session with each before terminating the therapy, and he was not on any medication. Furthermore, he stated he had not thought of moving from his home, and he had not missed any work as a result of the incident. Based on our caselaw precedent, these difficulties do not amount to clear-cut proof he suffered emotional distress so severe that no reasonable person could be expected to endure it; therefore, the circuit court correctly granted summary judgment on the claim for outrage.
Coverage Under Allstate Insurance Policy
Finally, Rick contends our court should hold that Allstate's insurance policy for *6 uninsured-motorist benefits covers damages for emotional harm under its definition of "bodily injury," defined in the policy as "bodily injury, sickness, disease, or death." In his reply brief, he acknowledges that addressing the policy language is moot unless he prevails on either of his first two points. Because we hold summary judgment was proper on the claims for negligent infliction of emotional distress and outrage, his third point is indeed moot, and we need not address it.
Affirmed.
Vaught and Brown, JJ., agree.

Allstate is the Holmans' insurance carrier. The Holmans sued for uninsured-motorist benefits under their Allstate policy because Flores was uninsured, and she was specifically excluded from coverage on Cummings's auto insurance.

In Park Plaza Mall CMBS, LLC v. Powell , 2018 Ark. App. 48, at 5, 2018 WL 562366, our court held:
We reiterate the general rule that the dismissal of a claim without prejudice does not create finality. Beverly Enters.-Ark., Inc. v. Hillier , 341 Ark. 1, 3, 14 S.W.3d 487, 488 (2000). By contrast, the dismissal of a party to an action, with or without prejudice, is sufficient to obtain finality and invest jurisdiction in an appellate court. Driggers v. Locke , 323 Ark. 63, 913 S.W.2d 269 (1996). The rationale for these rules provides important context. The dismissal without prejudice of a party is sufficient to create finality because "nothing requires a plaintiff to sue the prospective defendants simultaneously." Driggers , 323 Ark. at 66, 913 S.W.2d at 270. However, the dismissal of fewer than all claims against a party is insufficient because our courts seek to avoid piecemeal appeals. Id.
For this reason, there is a final, appealable order in this case, even though the causes of action of Joy and Taylor against Flores and Cummings were dismissed without prejudice.