Cite as 2026 Ark. App. 153

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-749

|  |  |
|---|---|
| | Opinion Delivered March 4, 2026 |
| ALEXANDER OBERLANDER<br>APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-23-208] |
| V. | |
| DAVID OBERLANDER AND CONWAY NEUROLOGY, P.A.<br>APPELLEES | HONORABLE CHARLES E. CLAWSON III, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Alexander Oberlander appeals a Faulkner County Circuit Court order granting summary judgment in favor of his father, David Overlander, and his father's medical clinic, Conway Neurology, P.A., and dismissing his tort-of-outrage and invasion-of-privacy claims. We affirm.

Alexander's parents, Nicole and David Oberlander, divorced in Alabama in 1998 when Alexander was two. As part of the divorce, David and Nicole entered into a property-settlement and child-custody agreement whereby David agreed to pay $2,000 a month in child support until Alexander turned twenty-one, married, or otherwise became self-supporting. Child support was to be paid to Nicole until Alexander turned nineteen, then payments would be made directly to Alexander. The agreement further provided that "[e]ach

party shall further have the right to obtain medical records of the child from any provider regardless of which party secured the medical service on behalf of the child."

David subsequently failed to make the court-ordered child-support payments, and in March 2021, Nicole filed a motion for contempt against him seeking $48,000 in back child support and other unpaid medical and educational expenses.

David filed a formal response to the motion in which he averred that Alexander was addicted to drugs and that he had been expelled from school for "poor choices," including but not limited to "drug use, failing classes, hiring prostitutes, and disorderly conduct." He then testified at a February 2022 hearing on the motion that he had not paid child support to Alexander out of concern for him. He testified that Alexander had "an active problem with excessive [illicit] drug use" and had been admitted to a drug rehab facility. David then allegedly produced, in open court, a collection of Alexander's medical records to support his claims.

Alexander, who was twenty-five at the time of the hearing, was not present, although he was supposed to attend the hearing by Zoom.[1] The cover sheet accompanying the medical records indicated that the records were faxed from Alexander's medical provider to Conway Neurology on April 13, 2016; therefore, Alexander was twenty years old—an adult—when the medical records were accessed.

---

[1]Alexander was allegedly in Russia attending medical school at the time.

2

At close of the hearing, the court ordered David to pay the past medical and educational expenses as well as the back child support. However, the court held Alexander in contempt for his failure to attend the hearing and delayed David's payment of child support to him until Alexander presented himself to the court.

Another hearing was held in January 2023. Alexander appeared at that hearing, and the court set aside the finding of contempt and ordered David to begin making payments to Alexander on his arrearages. Alexander claims it was at this hearing that he discovered David had accessed his medical records and entered them into the record.

As a result of this discovery, Alexander filed suit against David and his clinic,[2] claiming that David had not been authorized to access his medical records and that David had improperly disclosed his private medical information during the contempt hearing. He claimed that this improper disclosure caused him irreparable reputational harm, humiliation, and distress. He asserted that David's conduct constituted the tort of outrage and was an invasion of his privacy through public disclosure of private facts and by intrusion upon seclusion.

In his answer, David admitted that neither he nor the clinic had provided any medical care to Alexander and that Alexander's medical records had been faxed to him as Alexander's parent and payor of Alexander's medical expenses. Otherwise, he generally denied the

---

[2]David and the clinic's pleadings were jointly filed. For ease of reading, the joint pleadings will be referred to herein as David's pleadings.

allegations in the complaint. He further alleged that Alexander's complaint failed to state facts upon which relief could be granted and moved to dismiss under Rule 12(b)(6) of the Arkansas Rules of Civil Procedure.

On February 9, 2024, David filed a motion for summary judgment.[3] In his motion, David claimed that his actions in obtaining his son's medical records did not meet the level of outrageousness required to support a claim on the tort of outrage. He argued that he had been authorized to access Alexander's medical records by the court and by the divorce decree and that the medical records were introduced to explain to the court his concern about making the child-support payments directly to Alexander. He claimed that the introduction of evidence to the court was not a tort. As for the clinic, he argued that the mere use of its fax machine was not sufficient to rise to the level of outrageous conduct. Finally, he claimed that Alexander had failed to show that he suffered "severe" emotional distress as a result of the alleged misconduct. He argued that Alexander's complaint had alleged only humiliation and distress but that, to sustain a cause of action for outrage, the harm must be "so severe that no reasonable person could be expected to endure it." David further argued that it was Alexander's conduct as described in the records that caused him distress, not David's act in obtaining his medical records. Thus, causation was lacking.

---

[3]The divorce decree, the property-settlement and child-support agreement, and excerpts from the February 2022 and January 2023 hearings were attached as exhibits to the motion.

As for the invasion-of-privacy torts, David argued that Alexander's complaint likewise failed to state a cause of action on those claims. With regard to the public-disclosure-of-private-facts claim, David argued that Alexander failed to attach to his complaint the documentary evidence showing that David had publicly disclosed private facts. Additionally, he asserted that Alexander's medical information was not "publicized" simply because it was viewed by the court. He noted that Alexander's private health information was not filed with the court or put on the internet. He further argued that Alexander's claim for damages was lacking because he failed to show how his reputation was harmed by the court's looking at his medical records. Additionally, he asserted that, if Alexander had not received all the child support he thought he was owed as was alleged in the complaint, he could have appealed the court's ruling. With regard to his intrusion-upon-seclusion claims, David asserted that Alexander had no legitimate expectation that his parent, who was paying for his healthcare and who had a court order authorizing access to his medical records, would not have access to his medical information.

Alexander responded to the motion, arguing that the provisions of the divorce decree and property-settlement agreement did not authorize David to access his medical records once he reached the age of majority.[4] He argued that David used his medical license and medical practice to illegally access his medical records from an outside medical facility without a valid release. David then publicly filed those documents and published them in

---

[4]The amended motion for contempt and David's response to it were attached to Alexander's response.

open court in an attempt to smear Alexander and avoid paying his court-ordered child-support obligations. Alexander claimed that this behavior was sufficient to constitute the tort of outrage, public disclosure of private facts, and intrusion upon seclusion—invasion of privacy. He further asserted that his verified complaint sufficiently set forth the damages he sustained. He argued that he had refrained from attaching the medical records to his complaint until after a protective order could be obtained.

David filed a reply brief, arguing that the property-settlement and child-support agreement granted him the authority to obtain Alexander's medical records and that the court found he had the authority to do so at the previous hearing. He further asserted that Alexander's response hinged on his claim that David had no authority to access Alexander's medical records; yet Alexander had failed to prove that David abused his privileges as a physician to obtain his medical records or that David's conduct in obtaining those records was somehow outrageous given that it was done out of concern for the health and safety of his child. As for Alexander's failure to provide the court with the medical records at issue as is required under the rules, David noted that Alexander had taken no action to obtain a protective order beyond requesting one in his complaint. Moreover, David denied that any exhibits were filed for public viewing and claimed that Alexander had not shown that they were. Finally, David argued that, if the records had been improperly released, Alexander's complaint was with his medical provider who had released the files rather than with him.

The court entered an order granting summary judgment and dismissing Alexander's complaint with prejudice "for the reasons stated in Defendant's Motion."

Alexander thereafter filed a motion for reconsideration or clarification of the order of dismissal wherein he largely reiterated the arguments made in his summary-judgment response. The motion requested a hearing or, in the alternative, an order clarifying the basis for its dismissal.

David responded, arguing that there was no basis for reconsideration because Alexander had not raised any new arguments. Furthermore, he contended that no clarification was necessary because, when the court grants summary judgment without expressly stating the basis for the ruling, that ruling encompasses all the issues presented to the circuit court by the briefs and arguments of the parties.

The circuit court did not rule on the motion, and it was deemed denied after thirty days. Alexander then filed a timely notice of appeal from the order of dismissal and the denial of his motion for reconsideration and clarification.

The law is well settled that summary judgment is to be granted by a circuit court only when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Dodson v. Taylor*, 346 Ark. 443, 57 S.W.3d 710 (2001). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the

7

moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and documents filed by the parties. *Id.*

Alexander asserted three causes of action against David: (1) tort of outrage, (2) invasion of privacy by public disclosure of private facts, and (3) invasion of privacy by intrusion upon seclusion. These three causes of action are described below.

The tort of outrage—also known as the intentional infliction of emotional distress—subjects an actor to civil liability for committing extreme and outrageous behavior. *Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, 473 S.W.3d 60. To succeed on an outrage claim, a plaintiff must demonstrate four elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Id.* at 15, 473 S.W.3d at 60. The type of conduct that constitutes outrage must be determined on a case-by-case basis. *Holman v. Flores*, 2018 Ark. App. 298, 551 S.W.3d 1. The tort of outrage is narrowly viewed by Arkansas appellate courts, which require clear-cut proof to establish the elements. *Id.* Merely describing conduct as outrageous does not make it so. *Id.* The tort of outrage "should not and does not open the doors of the courthouse to every slight insult or indignity one must endure in life." *Id.* at 6–7, 551 S.W.3d at 4 (citing *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007)).

8

Arkansas also recognizes four actionable forms of invasion of privacy,[5] two of which are at issue here. The first is public disclosure of private facts. A public disclosure of private facts is publicity of a highly objectionable kind, given to private information about the plaintiff, even though it is true, and no action would lie for defamation. *McMullen v. McHughes Law Firm*, 2015 Ark. 15, 454 S.W.3d 200. To succeed on this invasion-of-privacy claim, a plaintiff must prove that (1) he sustained damages; (2) the defendants made a public disclosure of a fact about the plaintiff; (3) prior to disclosure the fact was not known to the public; (4) a reasonable person would find the disclosure highly offensive; (5) the defendants knew or should have known that the disclosed fact was private; (6) the fact was not of legitimate public concern; and (7) the public disclosure was the proximate cause of the plaintiff's damages. *Duggar v. City of Springdale*, 2020 Ark. App. 220, 599 S.W.3d 672.

To prove intrusion upon seclusion, a plaintiff must establish that (1) the plaintiff sustained damages; (2) the defendant intentionally intruded physically or otherwise upon plaintiff's solitude or seclusion and believed or was substantially certain that the defendant lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act; (3) the intrusion was of a kind that would be highly offensive to a reasonable person as the result of conduct to which a reasonable person would strongly object; (4) the plaintiff conducted himself or herself in a manner consistent with an actual

---

[5]These are (1) intrusion upon seclusion; (2) misappropriation of name or likeness; (3) public disclosure of private facts; and (4) false light. *Dodrill v. Ark. Democrat Co.*, 265 Ark. 628, 637, 590 S.W.2d 840, 844 (1979) (adopting the Restatement (Second) of Torts).

expectation of privacy; and (5) the defendant's intrusion was the proximate cause of the plaintiff's damages. *Duggar*, *supra*.

In this case, the circuit court granted summary judgment "for the reasons stated in Defendant's Motion [for Summary Judgment]." In his motion for summary judgment, David challenged each of Alexander's tort claims on multiple grounds. However, Alexander, on appeal, has failed to address each of the individual grounds. When a circuit court bases its decision on more than one independent ground and the appellant challenges fewer than all those grounds on appeal, we will affirm without addressing any of the grounds. *Evangelical Lutheran Good Samaritan Soc'y v. Kolesar*, 2014 Ark. 279; *Patel v. Patel*, 2015 Ark. App. 726, 479 S.W.3d 580.

For example, in his motion regarding the tort of outrage, David argued, in part, that his conduct did not meet the level of outrageousness required to support a claim on the tort of outrage; that he had been authorized by the court and by the divorce decree to access Alexander's records; and that Alexander had failed to show that he suffered "severe" emotional distress as a result of the alleged misconduct. David further claimed that it was Alexander's conduct in the records that caused him distress, not David's act in obtaining his medical records; thus, causation was lacking. As for the clinic, David argued that the mere use of its fax machine was not sufficient to rise to the level of outrageous conduct.

On appeal, however, Alexander simply argues that summary judgment was inappropriate because there was no evidence that David had authority to obtain his adult medical records. He asserts that David abused his privileges as a physician to obtain the

10

sensitive medical records of his adult child and used that information to make damaging and harmful accusations against Alexander in public documents and in open court, all in an attempt to avoid being found in contempt of an order to which he had agreed. He claims that he did not discover the disclosure until he was forced to travel from Russia to attend a hearing to mitigate a contempt citation. Yet Alexander fails to address David's arguments challenging the severity of Alexander's distress or the outrageousness of David's conduct.

The same problem befalls Alexander's invasion-of-privacy claims on appeal. Regarding the public-disclosure-of-private-facts cause of action, David argued in his motion that Alexander had failed to attach as exhibits to his complaint the documentary evidence showing that David did publicly disclose private facts; that there was no proof that anyone other than the litigants, the attorney, and the court were present in the courtroom; that Alexander's private health information was not filed with the court or put on the internet; and that Alexander's claim for damages was lacking because he failed to show how his reputation was harmed by the court's review of his medical records.

On appeal, however, Alexander argues that the information David publicly disclosed about him in his attempt to avoid paying child support was the subject of private mental health records that David did not have the right to access. He claims that this damaging information will be available to the general public when he seeks employment after medical school. He further argues that he did not attach the medical records to his complaint because a protective order was needed. Yet he does not provide any evidence that the public has access to this information or that he has, in fact, suffered any reputational harm as a result

11

of this disclosure. Once again, his arguments on appeal do not address all the issues raised in David's motion for summary judgment upon which the court made its decision.

As for Alexander's intrusion-upon-seclusion claims, David asserted below that Alexander had no legitimate expectation that his parent, who was paying for his healthcare and who had a court order authorizing access to his medical records, would not have access to his medical information. Yet on appeal, Alexander argues only that he was the subject of a smear campaign by his estranged father, that David's allegations were made in open court and filed in the public record, that David illegally obtained his medical records, that David did not make any effort to seal the records or otherwise protect his private medical information resulting in damage to his reputation, and that he suffered humiliation and distress as a result. Again, Alexander failed to provide any evidence that the public has access to this information or that he has, in fact, suffered any reputational harm as a result of this disclosure.

Moreover, any statements made by a party as a litigant in a judicial proceeding is protected by absolute privilege.

The Restatement (Second) of Torts provides:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Restatement (Second) of Torts § 587 (A.L.I. 1977). The rules on absolute privilege to publish defamatory matter also apply to the publication of any matter that is an invasion of privacy. *Id.* § 652F.

The comments to the Restatement state that, like the privilege of an attorney, this privilege is absolute. *Id.* § 587 cmt. a. It protects a party to private litigation from liability for defamation irrespective of his purpose in publishing the defamatory matter, of his belief in its truth, or even his knowledge of its falsity. *Id.* It is not necessary that the defamatory matter be relevant or material to any issue before the court. *Id.* cmt. c. It is enough that it has some reference to the subject of the inquiry. *Id.* Thus, while a party may not introduce into his pleadings defamatory matter that is entirely disconnected with the litigation, he is not answerable for defamatory matter volunteered or included by way of surplusage in his pleadings if it has any bearing upon the subject matter of the litigation. *Id.* The fact that the defamatory publication is an unwarranted inference from the alleged or existing facts is not enough to deprive the party of his privilege if the inference itself has some bearing upon the litigation. *Id.*

Arkansas follows the Restatement in this regard. As recently as 2024, we stated:

The Restatement (Second) of Torts § 587 provides that "[a] party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." *See also Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998) (acknowledging privilege for witness's testimony in private litigation); *Mauney v. Millar*, 142 Ark. 500, 503, 219 S.W. 1032, 1033 (1920) (affirming trial court's decision to sustain demurrer in libel

action and holding that "pertinent and relevant statements in pleadings are absolutely privileged").

*Webster v. Webster*, 2024 Ark. App. 319, at 5–6, 689 S.W.3d 133, 136–37 (holding that statement in court pleadings is privileged).

Here, the information was revealed as part of the judicial proceedings in his parents' divorce case. As such, it is covered by absolute privilege, and Alexander's causes of action must necessarily fail.

For the foregoing reasons, we affirm.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Michelle Ator*, *Martin A. Kasten*, and *Melody Pruitt Guffey*, for appellee.